# EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:** AMAZON.COM, INC.; AMAZON LOGISTICS,
*(AVISO AL DEMANDADO):* INC.; and DOES 1 through 100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:** KIMBERLEE KELLER and TOMMY
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* GARADIS, Individually and
On Behalf of All Others Similarly Situated

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California, County of San Francisco<br>400 McAllister Street<br>San Francisco, California 94102 | **CASE NUMBER:**<br>*(Número del Caso):*<br>**CGC-17-557507** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: Kevin M. Osborne
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
The Arns Law Firm
515 Folsom Street, 3rd Floor, San Francisco, CA 94105          415-495-7800

| DATE:<br>*(Fecha)*  MAR 1 3 2017 | CLERK OF THE COURT<br>Clerk, by   KALENE APOLONIO | , Deputy |
|---|---|---|
| | *(Secretario)* | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*: AMAZON.COM INC.
   under: ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*: 3/24/17

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
Westlaw Doc & Form Builder

1  Robert S. Arns, State Bar No. 65071 (rsa@arnslaw.com)
2  Jonathan E. Davis, State Bar No. 191346 (jed@arnslaw.com)
   Kevin M. Osborne, State Bar No. 261367 (kmo@arnslaw.com)
3  Julie C. Erickson, State Bar No. 293111 (jce@arnslaw.com)
   Shounak S. Dharap, State Bar No. 311557 (ssd@arnslaw.com)
4  **THE ARNS LAW FIRM**
   A Professional Corporation
5  515 Folsom St., 3rd Floor
   San Francisco, CA 94109
6  Tel: (415) 495-7800
7  Fax: (415) 495-7888

8  Attorneys for Plaintiffs

**ENDORSED
F I L E D**
*San Francisco County Superior Court*

MAR 1 3 2017

CLERK OF THE COURT
BY: KALENE APOLONIO
Deputy Clerk

9
10      IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
             IN AND FOR THE COUNTY OF SAN FRANCISCO
11                          CIVIL UNLIMITED

12  KIMBERLEE KELLER and TOMMY        Case No. [Unassigned]  CGC-17-557507
13  GARADIS, Individually and On Behalf of
    All Others Similarly Situated,        **CLASS ACTION COMPLAINT FOR**
14                                         **DAMAGES [C.C.P. § 382]**
                    Plaintiffs,
15  vs.                                    1. Violation of Lab. Code §§ 204, 216, 1194,
16                                            1197
    AMAZON.COM, INC.; AMAZON             2. Violation of Lab. Code §§ 204, 510, 1194,
17  LOGISTICS, INC.; and DOES 1 through     1198
    100, inclusive,                       3. Violation of Lab. Code §§ 204, 1194, 1197
18                                         4. Violation of Lab. Code §§ 226.7, 512
19                  Defendants.           5. Violation of Lab. Code §§ 201, 202, 203
                                          6. Violation of Lab. Code §§ 226, 1174
20                                         7. Violation of Lab. Code §§ 224, 2802
21                                         8. Violation of Lab. Code § 226.8
                                          9. Violation of Lab Code § 2753
22                                        10. Violation of Bus. & Prof. Code § 17200
23                                        11. Fraud/Intentional Misrepresentation
                                          12. Trespass/Conversion
24
                                          AMOUNT EXCEEDS $75,000
25
26

27
28

Class Action Complaint

**INTRODUCTION**

Plaintiffs KIMBERLEE KELLER and TOMMY GARADIS ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class action against Defendants AMAZON.COM, INC. and AMAZON LOGISTICS, INC. (collectively, "Amazon"), as well as DOES 1 through 100, (collectively "Defendants") and allege, upon information and belief, except as to their own actions, the investigation of counsel, and the facts that are a matter of public record, as follows:

1.     Plaintiffs bring this action to obtain damages, restitution, injunctive relief, and other relief, individually and on behalf of the proposed class defined below ("Class"), against Amazon, which, Plaintiffs contend, misclassified them and the Class as independent contractors.

2.     Made simple, Amazon is in the business of delivering a variety of household items, office supplies, tools, groceries, prepared food, and other consumer goods. In order to deliver items to customers, Amazon uses a fleet of delivery workers. These workers, referred to by Amazon as "Delivery Partners," use the Amazon Flex mobile application ("app") to select blocks of time during the week when they are available to perform deliveries. Amazon then approves or denies delivery workers' requests and assigns shifts. When a shift begins, delivery workers are expected to be available to collect deliveries from various stores, restaurants, or warehouses, then deliver them to Amazon customers.

3.     The vast majority of Amazon's revenue comes from international sales of consumer goods. Yet Amazon describes itself publicly as a "technology company."[1] This description would imply Amazon is not in the delivery business and does not employ delivery workers who deliver goods on Amazon's behalf. In official documents, however, Amazon acknowledges it is in the business of delivering goods. For example, in its 2015 Form SI-350 filed with the California Secretary of State, Amazon described its business as a "delivery service." This is an admission that Amazon is in the business of delivering goods, and it is, therefore, subject to the same

---

[1] Amazon Chief Technology Officer, Werner Vogels, stated in a presentation to the Hack FWD Conference in Berlin in 2011, "Amazon is a technology company. We just happen to do retail." Video of his presentation is available at http://hackfwd.com/pmm/#amazon-and-the-lean-cloud; last viewed March 7, 2017. The statement is made at approximately 1:20" in the presentation.



employment laws as any other employer in this industry.

4.      Amazon intentionally misrepresented the nature of the Amazon Flex program to Plaintiffs. Amazon markets the Amazon Flex program to potential delivery workers as an opportunity to "be your own boss," "set your own schedule," and "manage your own business." In practice, delivery workers have little or no control over the means, manner, or method of their work. Amazon controls when, where, and how the delivery workers perform their work and retains control over delivery workers' schedules.

5.      Additionally, Amazon represented to Plaintiffs that they were not entitled to reimbursements for expenses incurred in relation to their employment, minimum wage guarantees after wage reductions for expenses, compensation for all hours worked, and overtime compensation. Amazon also denies workers' compensation insurance benefits and tax benefits enjoyed by employees, shifting all risks and burdens to the delivery workers and saving itself millions in overhead in the process.

6.      Amazon denies delivery drivers access to itemized statements of their earnings and hours. Amazon takes the additional step of preventing delivery drivers from using simple features equipped on all modern mobile devices to capture images as they appear on the device interface, or take "screenshots." While many apps disable screenshots for legitimate reasons, such as the protection of copyrighted material, the Amazon Flex app disables screenshots for the purpose of preventing delivery drivers' from capturing details of how they are compensated for their work.

7.      This class action asserts causes of action under California state law for failure to pay minimum wage and overtime, denial of reimbursements for business-related expenses, denial of meal breaks and rest periods, willful misclassification, unfair competition, fraud, and trespass/conversion.

8.      Plaintiffs seek actual and compensatory damages, civil penalties, restitution, equitable relief, costs and expenses of litigation, attorneys' fees, and all additional and further relief that may be available and that the Court may deem appropriate and just under all of the circumstances.

## JURISDICTION AND VENUE

9.     Plaintiffs bring this class action pursuant to Section 382 of the California Code of Civil Procedure and seek to remedy Defendants' violations of state law, including the Labor Code, Civil Code, Unfair Competition Law, and orders promulgated by the Industrial Welfare Commission, arising from and related to Defendants' independent contractor misclassification, failure to pay wages, denial of minimum wage, denial of overtime wages, denial of meal and rest periods, as well as related misconduct.

10.     Venue is proper in this Court because, inter alia, Defendants engage and perform business activities in and throughout the State of California, including in the County of San Francisco. Class members, including Plaintiff Keller, regularly performed work in San Francisco County and many of the acts complained of herein occurred in this judicial district.

## PARTIES

11.     Plaintiff KIMBERLEE KELLER is a resident of Santa Rosa, California who performed delivery work for Amazon in San Francisco. Amazon has employed her as a delivery worker since December 2016. Amazon misclassified her as an independent contractor. During the course of her employment with Amazon, she incurred expenses related to her work, including vehicle maintenance, fuel, and other driving related expenses, for which she was not reimbursed. Consequently, she was not paid at or above the minimum wage for the applicable jurisdiction for the hours she worked.

12.     Plaintiff TOMMY GARADIS is a resident of Los Angeles, California who performed delivery work for Amazon in Los Angeles. Amazon has employed him as a delivery worker since December 2016. Amazon misclassified him as an independent contractor. During the course of his employment with Amazon, he incurred expenses related to his work, including vehicle maintenance, fuel, and other driving related expenses, for which he was not reimbursed. Consequently, he was not paid at or above the minimum wage for the applicable jurisdiction for the hours he worked.

13.     Defendant AMAZON.COM, INC. is a Delaware corporation with its principal place of business located at 410 Terry Avenue N in Seattle, Washington. It is the parent company of



Defendant AMAZON LOGISTICS, INC. and maintains substantial ongoing business operations throughout the United States, including in the County of San Francisco, and is in the business of providing online shopping and delivery services.

14.     Defendant AMAZON LOGISTICS, INC. is a Delaware corporation with its principal place of business located at 410 Terry Avenue N in Seattle, Washington. It maintains substantial ongoing business operations throughout the United States, including in the County of San Francisco, and is in the business of providing online shopping and delivery services. Defendant AMAZON.COM, INC. and Defendant AMAZON LOGISTICS, INC. are referred to collectively in this complaint as "Amazon."

15.     The true names and capacities of DOES 1 through 100, inclusive, are unknown to Plaintiffs, who sue such Defendants by use of such fictitious names. Plaintiffs will amend this complaint to add the true names when they are ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is legally responsible for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by their conduct.

16.     On information and belief, at all times herein mentioned, each Defendant was the agent, partner, joint venturer, representative, or employee of the remaining Defendants, and was acting within the course and scope of such agency, partnership, joint venture, or employment. Furthermore, in engaging in the conduct described below, the Defendants were all acting with the express or implied knowledge, consent, authorization, approval, or ratification of their co-Defendants.

### CLASS ACTION ALLEGATIONS

17.     Plaintiffs bring this action as a class action pursuant to Section 382 of the Code of Civil Procedure on behalf of themselves and the following Class:

> All persons who performed delivery work through the Amazon Flex app in the State of California for or on behalf of one or more of the Defendants from March 9, 2013 to the present.

Plaintiffs reserve the right to amend this Class definition if discovery or further investigation demonstrate that the Class should be expanded or otherwise modified.

18.     Plaintiffs' right to pursue this action as a class action is a substantive right pursuant to Section 923 of the Labor Code, declaring as the public policy of this state that it is necessary that the individual worker have full freedom of association, self-organization, and designation of representatives of the worker's own choosing, to negotiate the terms and conditions of the worker's employment, and that the worker shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.

19.     **Numerosity of the Class.** The members of the Class are so numerous that joinder of all members would be impracticable. The precise number of members of the Class and their addresses are presently unknown to Plaintiffs. The precise number of persons in the Class and their identities and addresses may be ascertained from Defendants' records. If deemed necessary by the Court, members of the Class may be notified of the pendency of this action by mail and supplemented by published notice.

20.     **Existence of Predominance of Common Questions of Fact and Law.** There are questions of law and fact common to the members of the Class that predominate over any questions affecting only individual members, including:

    a.   Whether Defendants misclassified Plaintiffs as independent contractors;

    b.   Whether Defendants failed to pay Plaintiffs overtime compensation due to them, in violation of California law;

    c.   Whether Defendants failed to provide Plaintiffs with meal or rest periods due to them, in violation of California law;

    d.   Whether Plaintiffs worked hours in excess of eight (8) hours a day or forty (40) hours per week without overtime compensation for said hours worked;

    e.   Whether Defendants failed to pay Plaintiffs for all hours of work performed in violation of California law without compensation for said hours worked;

    f.   Whether Defendants failed to reimburse Plaintiffs for expenses incurred during the course of their employment;

g.  Whether Defendants failed to maintain accurate wage statements for Plaintiffs;

h.  Whether Defendants' conduct amounts to trespass to or conversion of Plaintiffs' property, in violation of California law;

i.  Whether Defendants' conduct violates the Labor Code;

j.  Whether Defendants' conduct violates Business and Professions Code Section 17200;

k.  Whether Defendants' conduct otherwise violates California law; and

l.  Whether, as a result of Defendants' misconduct, Plaintiffs are entitled to damages, restitution, equitable relief or other damages and relief, and, if so, the amount and nature of such relief.

21.  **Typicality.** Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs have no interest antagonistic to those of the Class and are not subject to any unique defenses.

22.  **Adequacy.** Plaintiffs will fairly and adequately protect the interests of all members of the Class and have retained attorneys experienced in employment class action and complex litigation.

23.  **Superiority.** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons:

a.  It is economically impractical for members of the Class to prosecute individual actions;

b.  The Class is readily definable;

c.  Prosecution as a class action will eliminate the possibility of repetitious litigation; and

d.  A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

24.  Plaintiffs do not anticipate any difficulty in the management of this litigation.

## FACTUAL ALLEGATIONS

**Amazon's Business Model Deprived Plaintiffs the Benefits and Protections of Employment**

25.  Amazon offers customers the ability to purchase items available on the amazon.com website. Consumers using the Amazon platform to shop for goods have the option of paying a monthly fee to subscribe to the "Amazon Prime" service, which includes, among other things,



1    free two-day delivery.

2    26.     In early 2015, the Amazon Prime service was expanded to include the "Amazon Prime

3    Now" feature, which offers subscribers in many of Amazon Prime's geographical markets a free

4    two-hour delivery option and a one-hour delivery option for a small fee.

5    27.     Amazon uses a dispatch system for its deliveries called "Amazon Flex." When a purchase

6    is made through Amazon Prime Now, Amazon notifies a delivery worker, referred to by Amazon

7    as a "Delivery Partner," using the Amazon Flex app. All Amazon Flex delivery workers have this

8    app installed on their mobile devices, and when a notification is sent, the delivery worker has a

9    prescribed amount of time to acknowledge receipt of the notification and begin the delivery

10    process.

11    28.     Amazon directs Amazon Flex delivery workers to complete deliveries by instructing them

12    where to go to collect the order, what specific items to collect, and where to take the order. They

13    are also given directions to all destinations through the app and special instructions that may

14    apply to the order. Nothing involved in the delivery process is left to the delivery workers'

15    discretion.

16    29.     Delivering goods is the core of the Amazon business model. Without delivery services,

17    Amazon would not exist. Amazon Flex delivery workers, therefore, are fully integrated into

18    Amazon's business.

19    30.     At all relevant times, however, Amazon classified the Amazon Flex delivery workers as

20    independent contractors to the detriment of Plaintiffs and the Class.

21    31.     At all relevant times, Amazon issued delivery workers Form 1099s, indicating they

22    independent contractors and were not Defendants' employees.

23    32.     Because of this classification, Plaintiffs and the other delivery workers suffered actual

24    economic harm.

25    33.     Amazon's classification of delivery workers as independent contractors resulted in the

26    denial of pay for all hours work, resulted in pay that fell below the applicable minimum wage,

27    and precluded the delivery workers from receiving overtime compensation when they worked

28    more than 8 hours in a day or 40 hours in a week.



34.     Amazon's classification of delivery workers as independent contractors required delivery workers to use their own vehicles to make deliveries and required the workers to pay for all driving-related expenses.

35.     Amazon's classification of delivery workers as independent contractors denied delivery workers state-mandated workers' compensation insurance, leaving them exposed and personally liable for medical treatment needed because of the on-the-job injuries that are so common in occupations requiring frequent vehicular travel.

36.     Amazon's classification of delivery workers as independent contractors required delivery workers to pay increased tax rates mandatory for independent contractors.

37.     Amazon's classification of delivery workers as independent contractors required delivery workers to use their own mobile devices and data from their personal cell phone service plans in order to receive and carry out work orders.

38.     Amazon voluntarily and knowingly misclassified delivery workers as independent contractors for the purpose of avoiding the significant costs and responsibilities associated with the employer/employee relationship, including, *inter alia*, the payment of wages for non-productive time, expense reimbursements, provision of workers' compensation insurance, payment of state and federal taxes, and other benefits.

**Amazon Extensively Controlled All Aspects of Plaintiffs' Work**

39.     Despite Amazon's explicit and implicit classification of Plaintiffs and the Class as independent contractors, they were in fact employees of Amazon.

40.     Delivery workers were trained by Amazon to follow a litany of detailed requirements imposed on them by Amazon and they were graded and subject to termination based on their adherence to these requirements.

41.     Amazon generated the work orders for delivery workers; controlled their wages; prescribed and enforced behavioral codes of conduct; controlled the means, manner, and method by which they performed their work; and controlled the conditions of their employment.

42.     At all relevant times, Amazon assigned delivery workers orders via the Amazon Flex app. Indeed, the only way to perform any work for Amazon was through the Amazon Flex app, which

could only be used as determined by Amazon.

43.     As a result, delivery workers did not know where they were to be assigned to work, the type of deliveries they were to be performing, or the length of time any given assignment was expected to require until they received Amazon's work order text message. Delivery workers were not permitted to collect the materials from locations of their choosing or deliver them at a time or a price they negotiated.

44.     Amazon directed delivery workers precisely when and where they were to collect and deliver to Amazon customers and how delivery workers were to interact with Amazon customers. Delivery workers were required to inform Amazon through the Amazon Flex app when they arrived and the pick up location, when they arrived at the drop off location and where they were at all times in between.



Image from https://flex.amazon.com/faqs/, last viewed March 7, 2017.

45.     Delivery workers were told they could set their own schedules. In reality, however, they could only request their own schedules. Amazon retained the right to approve or deny any schedule request. If Amazon denied a delivery workers' request for a scheduled block of time, the worker would not receive any orders and would not be paid.

46.     Amazon required delivery workers to accept every order that Amazon dispatched within a set time. If delivery workers failed, for whatever reason, to acknowledge even a single order, they would receive no compensation for the rest of the pre-determined shift regardless of whether they

were one minute or six hours into their shift. After acknowledging an order, delivery workers were required to collect the order within a certain timeframe. If delivery workers repeatedly did not meet Amazon's expectations as to the time within which to commence collection, Amazon would schedule them for fewer shifts or not at all.

47.     If delivery workers did not comply with Amazon's work requirements, they were subject to reduced effective pay, discipline, and termination. If a delivery worker's performance metrics were outside Amazon's expectations, Amazon would assign them fewer or smaller orders and fewer or shorter shifts.

48.     Amazon retained the right to terminate delivery workers from Amazon's employment at Amazon's discretion.

49.     Despite the independent contractor label, there was essentially no element of the delivery workers' job that the delivery workers independently controlled.

### Amazon's Onboarding and Training of Plaintiffs

50.     As a prerequisite to being hired as Amazon Flex Delivery Partners, Plaintiffs and the other delivery workers had to undergo a background check and training by Amazon regarding how to perform their duties. Training included how to use the Amazon mobile application and how to interact with customers. Amazon required further training regarding delivering alcohol as part of a work order. Delivery workers were not compensated for this training.

51.     Delivery workers were asked to attend an interview and orientation at an Amazon office. At these interviews and orientations, an Amazon employee presented an orientation and trained the delivery workers how to operate the Amazon Flex app on their mobile devices. Amazon hired delivery workers upon completion of the interview and orientation.

52.     Delivery workers also underwent on-the-job training sessions during which they shadowed other delivery workers. They were further directed to watch Amazon videos or presentations, hosted on the app, for additional instruction on how to perform their job duties in accordance with Amazon's standards and objectives.

//

//



**Independent Contractor Terms of Service**

53.     Also as a condition of engagement, delivery workers were required to agree to the "Amazon Flex Independent Contractor Terms of Service" and the attached "Amazon Flex Program Policies." These documents were drafted by Amazon, were not subject negotiation, and were presented to delivery workers at the end of the application process as a condition of engagement.

54.     Among other things, the Terms of Service stated that delivery workers were independent contractors and not employees of Amazon. On that basis, Amazon denied Plaintiffs and the Class basic employment rights, benefits, and protections.

55.     The Terms of Service also represented to delivery workers that they would be "managing [their] own business." *See* Ex. 1, Independent Contractor Terms of Service, § 5.a.[2]

56.     The Program Policies, which are Exhibit A to the Terms of Service, stated, "[a]s an independent contractor, subject only to this Agreement, it is for you to decide the means and manner in which you provide the Services and achieve the results that you have agreed to provide." *See* Ex. 1, Amazon Flex Program Policies, § III.B.

57.     Similar misrepresentations appeared on the Amazon Flex website, where work opportunities were advertised. The mantra "[b]e your own boss" was found repeatedly throughout the site.

## Make $18-$25/hour

Be your own boss, set your own schedule, and have more time to pursue your goals and dreams. Join us and put the power of Amazon behind you.

Image from https://flex.amazon.com, last viewed March 7, 2017.

58.     Buried in the Terms of Service, however, were conditions depriving delivery workers of

---

[2] Plaintiffs allege, upon information and belief, that the Terms of Service attached hereto as Exhibit 1 is a true and accurate copy of each of the Terms of Service to which delivery workers agreed and that Amazon possesses and is able to produce a copy of each Terms of Service agreed to by Plaintiffs.



control over the method, details, or means of their work. For example, the Program Policies stated, "Amazon requires that you arrive on time and be ready to provide services for any confirmed delivery block," "Amazon requires that you deliver the packages to the customers on time," "Amazon requires you to behave respectfully and professionally when interacting with customers, station operators, vendors and other delivery partners while providing the Services […] a single violation, depending on the seriousness of the infraction, can make you ineligible to participate in the Program," and "Amazon requires you to follow the delivery instructions in the app for from a customer as long as the customer instructions are reasonable and do not conflict with health, safety and other applicable laws."

59.      The Amazon Flex website made similar statements demonstrating Amazon's control of the delivery work, instructing, "we expect that you will be available to make deliveries during the blocks you are confirmed for," and "when customer instructions conflict with Amazon guidelines, follow Amazon guidelines."[3]



Image from https://flex.amazon.com/faqs/, last viewed March 7, 2017.

60.      Plaintiffs relied on Amazon's misrepresentations regarding being their own bosses and managing their own businesses to their detriment. Had they known that Amazon would have total control over their work and that they were not managing an autonomous business at all, they would not have accepted the Terms of Service.

61.      At the time, Amazon presented the Terms of Service to Plaintiffs, Amazon knew that this representation was false and that Plaintiffs would not control their own work.

62.      At the time, Amazon had management and operations teams in place that would

---

[3] Available at https://flex.amazon.com/faqs/, last viewed March 7, 2017.

1  supervise, manage, and control Plaintiffs' work. Further, at all relevant times the Amazon Flex

2  app precluded Plaintiffs from having any control over their work.

3  63.  The Terms of Service also contained an arbitration provision. This provision stated that

4  any controversy, dispute, or claim arising out of or relating to the services performed by Plaintiffs

5  for Amazon must be litigated exclusively in binding arbitration. Further, the arbitration provision

6  contained an express waiver of the right to a jury trial and did not provide for class arbitration. It

7  is Plaintiffs' position that this arbitration provision is unenforceable as the work performed by

8  delivery workers is exempt from the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and violates the

9  National Labor Relations Act (NLRA), 29 U.S.C. § 151–169, and the California Labor Code.

10  **Amazon Prevented Plaintiffs from Obtaining or Keeping Records of Their Wages**

11  64.  Amazon paid delivery workers via direct deposit. A partial wage statement showing their

12  "current earnings," or the total amount they had earned in the present pay period, was the only

13  information regarding pay available to the delivery workers on the Amazon Flex app.

14  65.  The Amazon Flex app omitted information detailing the actual hours delivery workers

15  worked and their hourly pay rate. The app similarly omitted the details of delivery workers' piece

16  rate compensation (i.e., per-batch commission) or the number of piece rate units delivered. Thus,

17  delivery workers had no means of verifying they were being paid correctly.

18

19

20

21

22

23

24

25

26

27

28



Image from https://flex.amazon.com, last viewed March 7, 2017.



66.     Amazon used coding in the Amazon Flex app that prevented delivery workers from retaining permanent records of their pay. When using the Amazon Flex app to view their current earnings in the app's interface, delivery workers were unable to capture images. Amazon's software stealthily disabled this feature of the delivery workers' mobile devices.

67.     Amazon utilized screenshot disabling features in the Amazon Flex app despite the fact delivery workers have a right under the NLRA and Labor Code to take photographs and make recordings of wage statements, including the right to use personal devices to take such pictures or recordings.

68.     Based on information and belief, Plaintiffs contend Amazon included the screenshot disabling features in the Amazon Flex app for the purpose of preventing delivery workers from having access to permanent records reflecting their pay.

**Amazon Failed to Reimburse Plaintiffs for Business-Related Expenses**

69.     Plaintiffs and the Class were required to bear the expenses necessary to perform their work.

70.     Amazon required delivery workers to use and maintain insured and licensed vehicles as a condition of their work. Delivery workers were required to pay all expenses related to the use and maintenance of these vehicles, including expenses related to insurance, fuel, routine maintenance, and the upkeep of their vehicles' appearance.

71.     The delivery workers incurred costs related to parking, such as parking meter payments and parking tickets, which were necessitated by Amazon's directives to its drivers. For example, Amazon directed its delivery workers to not park in customers' driveways, but instead to park in the street near the customers' homes while delivering orders. Amazon did not reimburse delivery workers for these work-related expenses in any manner.

72.     Amazon also required delivery workers to use their own mobile devices and data from their personal cell phone service plans as a condition of their work in order to receive and carry out work orders. Amazon did not reimburse delivery workers for these work-related expenses in any manner.

73.     Amazon did not provide workers' compensation insurance coverage to the delivery

workers. When delivery workers were injured in the course and scope of their employment with Amazon, they were left to rely on either their own private medical insurance or make direct payments for medical treatment rendered as a result of industrial injuries. In many cases, private insurance providers refused to treat delivery workers injured on the job because provisions in private insurance plans excluded coverage for injuries typically covered under an employers' workers' compensation insurance. The delivery workers were additionally ineligible for workers' compensation disability benefits if they were physically unable to perform their work as a consequence of industrial injuries.

74.     At all relevant times, Amazon paid taxes in a manner consistent with the delivery workers misclassification as independent contractors. As a consequence, the delivery workers were required to pay increased state and federal taxes at the rate of independent contractors despite the fact they were employees.

**Amazon Denied Plaintiffs Minimum Wage and Overtime**

75.     Amazon exerted sole control over the delivery workers' wages. At all relevant times, the delivery workers were paid in a manner completely dependent on the nature of the deliveries they made, including the quantity of items the delivery workers were required to collect and deliver under each individual work order.

76.     At all relevant times, delivery workers were paid in a manner dependent on the nature of the deliveries they made, including the quantity of items delivery workers were required to collect and deliver under each individual work order.

77.     Amazon claimed a guaranteed wage rate of no less than $18 per hour. Delivery workers' expenses, however, effectively reduced their wages to levels well below $18 per hour and below the applicable minimum wage.

78.     Delivery workers were required to make themselves available to perform work within a predetermined range of time each day but were not compensated at all for tasks performed before or after those hours. Deliveries were regularly performed after the end of delivery workers' scheduled shifts. Amazon did not compensate delivery workers for such time.

79.     Delivery workers were paid on a commission basis without regard to the hours worked.

Delivery workers frequently worked over 8 hours per day or 40 hours per week. Despite these long hours, the workers were not compensated at the required overtime rates.

80.     Delivery workers were also required to work without rest periods or meal periods.

81.     At no time during Plaintiffs' employment did Amazon provide Plaintiffs with any written or electronic wage statement showing hours worked, gross or net wages, hourly rates, paid or unpaid breaks or federal or state deductions.

<b>Amazon's Online Advertisements</b>

82.     Amazon advertised on its website and elsewhere that Amazon Flex delivery workers "Make $18-$25/hour" performing delivery services. Amazon made these representations in order to induce potential delivery workers to work for it but with knowledge that it was impossible to earn that hourly rate consistently. Delivery workers rarely earned an hourly rate of $25 per hour, and in fact, often earned below minimum wage.

### Why Amazon Flex?

∨



### Great earnings

Make $18-$25 an hour and easily track your earnings
with the Amazon Flex app.

Image from https://flex.amazon.com, last viewed March 7, 2017.

83.     The advertisements also did not mention that delivery workers would be classified as independent contractors, did not mention delivery workers would be required to pay their own expenses and would not have the benefit of insurance coverage, and did not mention a waiver of rights to participate in a class action or a jury trial or agreeing to arbitrate disputes with Amazon.

<b>Amazon's Willful Misclassification of Plaintiffs and Violation of Labor Laws</b>

84.     Amazon knew delivery workers were rightfully employees but chose to misclassify them as independent contractors. Amazon's motivation in misclassifying the delivery workers as independent contractors was to avoid the additional costs and financial responsibilities associated

with an employer/employee relationship, including, inter alia, the payment of minimum wage and overtime, the payment of overtime wages, expense reimbursements, payment of state and federal taxes, workers' compensation insurance, and other benefits.

85.   Amazon also specifically knew or recklessly disregarded whether it was violating the law by failing to pay overtime. Amazon knew of the financial obligations California law imposes on employers and its applicability to Amazon with respect to the delivery workers. Again, it was Amazon's knowledge of these financial obligations and its desire to circumvent them that motivated Amazon to willfully misclassify the delivery workers.

86.   As alleged herein, Amazon maintained extensive and pervasive control over Plaintiffs' and the other Delivery workers' conduct, means and manner of work, activities, wages, and hours. Amazon had detailed knowledge of and control over how many hours the delivery workers were working on a daily and weekly basis.

87.   Amazon also knew how much it was paying the delivery workers and that its method of compensation (i.e., on a piece rate/commission basis) gave no consideration to whether delivery workers worked more than 8 hours in a given day or 40 hours in a given week. Amazon has falsely denied and refused and continues to deny falsely and refuse payment for purposes of securing a material economic benefit to itself and with the intent to annoy, harass, oppress, hinder, or defraud delivery workers.

88.   Amazon chose to classify Amazon Flex delivery workers as independent contractors to save money.

89.   In misclassifying delivery workers as independent contractors and failing to pay wages and compensation due to them, as well as by committing the numerous other violations detailed in this complaint, Amazon, by and through its officers, directors or managing agents, acted with malice, oppression or conscious disregard for the statutory or other rights of Plaintiffs, and committed fraud by willfully and wrongly treating Plaintiffs as independent contractors and not employees.

//

//

### FIRST CAUSE OF ACTION
### UNPAID WAGES
### (Cal. Labor Code §§ 204, 216, 1194, & 1197)

90.   Plaintiffs reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

91.   Defendants, and each of them, have violated and continue to violate Labor Code §§ 216, 1194 & 1197 by willfully refusing to pay wages – including the benefits described above – due and payable to Plaintiffs. As more fully set forth above, Plaintiffs are not compensated for non-productive hours worked. Additionally, Plaintiffs work and have worked well in excess of 8 hours a day or 40 hours per week without being appropriately compensated for hours worked in excess of 40 hours per week and/or 8 hours per day. These unpaid hours include overtime that should have been paid.

92.   Equally, Defendants denied that any wages due for non-productive work and work in excess of 40 hours per week and/or 8 hours per day were due to be paid to Plaintiffs even though each Defendants knew that under any set of circumstances or facts, Plaintiffs were entitled to be paid for each hour that they worked. Defendants have falsely denied and refused and continue to deny falsely and refuse payment for purposes of securing a material economic benefit to themselves and with the intent to annoy, harass, oppress, hinder, and defraud Plaintiffs.

93.   Such a pattern, practice and uniform administration of a corporate policy designed to deprive employees of compensation, as described herein, is unlawful and creates an entitlement to recovery by the Plaintiffs, in a civil action, for the unpaid balance of the amount of unpaid wages, including interest thereon, and reasonable attorneys' fees and costs of suit, as well as the assessment of any other statutory penalties, including waiting time penalties, against Defendants.

### SECOND CAUSE OF ACTION
### FAILURE TO PAY OVERTIME WAGES
### (Cal. Labor Code §§ 204, 510, 1194, & 1198)

94.   Plaintiffs reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

95.   Plaintiffs have been and are expected to regularly work in excess of 8 hours per day or 40 hours per week. Plaintiffs have regularly worked and continue to regularly work in excess of 8

1  hours per day or 40 hours per week.

2  96.  At all relevant times, Defendants failed to pay Plaintiffs and all persons similarly situated

3  wages when due, as required by Labor Code §§ 204, 510, 1194 & 1198.

4  97.  Such a pattern, practice and uniform administration of a corporate policy designed to

5  deprive employees of compensation, as described herein, is unlawful and creates an entitlement

6  to recovery by the Plaintiffs, in a civil action, for the unpaid balance of the amount of overtime

7  and other compensation, including interest thereon, reasonable attorneys' fees and costs of suit, as

8  well as the assessment of any other statutory penalties against Defendants.

9  ### THIRD CAUSE OF ACTION
### FAILURE TO PAY MINIMUM WAGES

10  ### (Cal. Labor Code §§ 204, 1194, 1197)

11  98.  Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully

12  herein.

13  99.  Defendants, and each of them, pursuant to uniform policies and practices, failed to

14  compensate Plaintiffs at a rate not less than the minimum wage for all hours worked in violation

15  of the Labor Code, including sections 204, 1194, and 1197.

16  100.  As a result of Defendants' conduct, Plaintiffs are entitled to all monetary and other

17  damages permitted under the California Labor Code and any other applicable law, including the

18  unpaid balance of the amount of minimum wage, including interest thereon, reasonable attorneys'

19  fees and costs of suit, as well as the assessment of any other statutory penalties against

20  Defendants.

21  ### FOURTH CAUSE OF ACTION
### FAILURE TO PAY WAGES FOR MEAL PERIODS AND REST PERIODS

22  ### (Cal. Labor Code §§ 226.7 & 512)

23  101.  Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully

24  herein.

25  102.  Defendants have required and continue to require Plaintiffs to work for periods of more

26  than 5 hours per day with no provision of a meal period of at least 30 minutes.

27  103.  Defendants have required and continue to require Plaintiffs to work for periods of more

28  than 10 hours per day with no provision of a second meal period of at least 30 minutes.



Class Action Complaint
19

104.   Defendants have required and continue to require Plaintiffs to work for periods of more than 4 hours per day with no provision of a rest period of at least 10 minutes.

105.   Plaintiffs were not properly provided with meal or rest periods as required by California Labor Code §§ 226.7 and 512, and Industrial Welfare Commission Wage Order Nos. 4 and 7, for missed rest and/or meal periods on or after 2013.

106.   As a result of Defendants' conduct, Plaintiffs are entitled to all monetary and other damages permitted under the Labor Code and any other applicable law, including, but not limited to, an additional hour of pay for every day that Plaintiffs were not provided meal or rest breaks pursuant to Labor Code § 226.7.

### FIFTH CAUSE OF ACTION
### WAITING TIME
### (Cal. Labor Code § 201, 202 & 203)

107.   Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

108.   Labor Code §§ 201 and 202 require Defendants to pay their employees all wages due immediately at the time of discharge, layoff, or resignation made with at least 72 hours' notice and, within 72 hours of resignation made without 72 hours' notice.

109.   Labor Code § 203 provides that if an employer willfully fails to pay compensation promptly upon discharge, as required by §§ 201 or 202, then the employer is liable for waiting time penalties in the form of continued compensation of up to 30 work days.

110.   Plaintiffs allege thereon that since at least 2013, Defendants have failed to pay all earned wages to Plaintiffs during their employment with Defendants. In addition, beginning in at least 2013, members of the Class have been discharged, laid off, resigned, retired or otherwise voluntarily left employment, but Defendants did not pay earned wages upon separation of employment in violation of Labor Code §§ 201 and 202. Defendants' conduct in this regard has been willful.

111.   As a consequence of Defendants' willful failure to pay wages due to each such delivery worker following separation from employment as required by Labor Code §§ 201 and 202, Plaintiffs and Delivery workers whose employment ended during the three years prior to the date

of the initial filing of this action and continuing through the date of its final disposition are entitled to recover from Defendants an additional sum as a penalty, pursuant to Labor Code § 203, equal to thirty (30) days wages per person plus interest for each employee who separated from employment with Defendants, in amounts according to proof at trial.

**SIXTH CAUSE OF ACTION**
**FAILURE TO PROPERLY REPORT PAY**
**(Cal. Labor Code § 226 & 1174)**

112.    Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

113.    At all relevant times, Defendants failed to keep accurate records of the hours worked by Plaintiffs in violation of Labor Code §§ 226 & 1174. Defendants' failure to do so was knowing and intentional.

114.    At all relevant times, Defendants failed to provide Plaintiffs with accurate records of pay indicating the wages paid for the hours worked. Defendants took affirmative measures to prevent Plaintiffs from having permanent wage records by disabling the screenshot feature of their mobile devices. In addition, Defendants failed to provide Plaintiffs with any information at all indicating the hours worked and state and federal deductions. Further, when Plaintiffs were paid on an hourly basis, Defendants failed to provide Plaintiffs with the applicable hourly rate. When Plaintiffs were paid on a piece-rate basis, Defendants similarly failed to provide Plaintiffs with the applicable piece rate in effect during the relevant pay period and the number of piece-rate units earned. The wage statements also failed to include the Plaintiffs' names, the last four digits of their social security numbers or other employee identification number, and Amazon's name and address. Defendants' failure to do so was knowing and intentional.

115.    Plaintiffs suffered actual injury as a result of Defendants' knowing and intentional failure to keep and provide accurate records of said information, because Plaintiffs could not promptly and easily determine from the wage statement alone the following information: (1) the total number of hours they worked, including how much overtime they had worked; (2) the piece rate and the number of piece-rate units earned (when Plaintiffs were paid based on a piece rate); (3) the hourly rate in effect (when Plaintiffs were paid on an hourly basis); (4) the deductions taken



Class Action Complaint
21

by Amazon, if any; and (5) Amazon's address. Plaintiffs could not readily ascertain this information without reference to other documents or information, if at all.

116.   As a result of Defendants' conduct, Plaintiffs are entitled pursuant to Labor Code § 226(e) to all monetary and other damages permitted under the California Labor Code and any other applicable law, reasonable attorneys' fees and costs of suit, as well as the assessment of any other statutory penalties and injunctive relief against Defendants.

## SEVENTH CAUSE OF ACTION
## FAILURE TO REIMBURSE EXPENSES
### (Cal. Labor Code §§ 224 & 2802)

117.   Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

118.   Throughout their employment, Plaintiffs incurred expenditures or losses related to their employment and in direct consequence of the discharge of their duties as Defendants' employees, or of their obedience to the directions of Defendants.

119.   Defendants failed to reimburse or indemnify Plaintiffs for these expenditures or losses. Items and services that Plaintiffs were required to purchase include, but are not limited to gas, insurance, other vehicle maintenance services, parking privileges, mobile devices, and mobile device data packages.

120.   By the conduct described herein, Defendants have violated the Labor Code.

121.   As a result of Defendants' violations, Plaintiffs are entitled to reimbursement of the incurred expenses pursuant to Labor Code §§ 224 and 2802, as well as attorneys' fees and costs incurred as a result of such conduct.

## EIGHTH CAUSE OF ACTION
## WILLFUL MISCLASSIFICATION
### (Cal. Labor Code § 226.8)

122.   Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

123.   Defendants, and each of them, have violated and continue to violate California Labor Code § 226.8 by willfully misclassifying Plaintiffs as independent contractors. As more fully set forth above, Plaintiffs are not independent contractors.  Defendants knew that Plaintiffs were properly treated as employees but chose to misclassify them as independent contractors.

Defendants knowingly and voluntarily engaged in and continue to engage in a pattern and practice of these violations.

124. By misclassifying Plaintiffs as independent contractors, Defendants were able to avoid the significant responsibilities associated with the employer/employee relationship, including, inter alia, the payment of wages for non-productive time, expense reimbursements, provision of workers' compensation insurance, payment of state and federal taxes, and other benefits.

125. As a result of Defendants' conduct, Plaintiffs are entitled to all monetary and other damages permitted under the California Labor Code and any other applicable law, including, but not limited to, civil penalties pursuant to California Labor Code § 226.8.

## NINTH CAUSE OF ACTION
## ADVICE REGARDING MISCLASSIFICATION
### (Cal. Labor Code § 2753)

126. Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

127. Defendants, and each of them, have violated and continue to violate California Labor Code § 2753 by advising Defendant Amazon to treat Plaintiffs as independent contractors to avoid employee status for these individuals. As more fully set forth above, Plaintiffs are not independent contractors. Defendants knew that Plaintiffs were properly treated as employees but advised Defendant Amazon to misclassify them as independent contractors.

128. By misclassifying Plaintiffs as independent contractors, Defendants were able to avoid the significant responsibilities associated with the employer/employee relationship, including, inter alia, the payment of wages for non-productive time, expense reimbursements, provision of workers' compensation insurance, payment of state and federal taxes, and other benefits.

129. As a result of Defendants' conduct, Defendants shall be jointly and severally liable for all relief demanded herein.

## TENTH CAUSE OF ACTION
## UNFAIR, UNLAWFUL, FRAUDULENT BUSINESS PRACTICES
### (Cal. Bus. & Prof. Code § 17200, et seq.)

130. Plaintiffs reallege and incorporate by reference all paragraphs above as if set forth in detail herein. Amazon has engaged in unfair, unlawful, and fraudulent business practices as set forth above. By engaging in the above-described acts and practices, Amazon has committed one or more acts of unfair competition within the meaning of Section 17200 of the California

Business and Professions Code ("UCL"). These acts and practices constitute a continuing and ongoing unfair or unlawful business activity defined by the UCL, and justify the issuance of an injunction, restitution, and other equitable relief pursuant to the UCL.

**Amazon's Unlawful Business Practices:**

131.    Defendants have unlawfully treated Plaintiffs as independent contractors for purposes of business-related expenses and wages to avoid payment of overtime wages and other benefits in violation of, inter alia, the NLRA, the California Labor and Civil Code, and the applicable IWC Orders. In addition, Defendants have wrongly, illegally, and unfairly failed to compensate Plaintiffs for work-related expenses including but not limited to gas, vehicle maintenance services, car insurance, mobile device, and mobile device data package.

132.    Defendants have violated and continue to violate Business & Professions Code § 17200's prohibition against engaging in "unlawful" business acts or practices by, inter alia:

- Violating, and continuing to violate, Labor Code §§ 204, 216, 1194 & 1197, as set forth above;

- Violating, and continuing to violate, Labor Code §§ 204, 510, 1194 & 1198, as set forth above;

- Violating, and continuing to violate, Labor Code §§ 226.7, 512, 1194 & 1197, as set forth above;

- Violating, and continuing to violate, Labor Code §§ 201, 202, 203, as set forth above;

- Violating, and continuing to violate, Labor Code §§ 226 & 1174, as set forth above;

- Violating, and continuing to violate, Labor Code §§ 224 & 2802, as set forth above;

- Violating, and continuing to violate, Labor Code § 226.8, as set forth above;

- Violating, and continuing to violate, Labor Code § 2753, as set forth above;

- For fraud/intentional misrepresentation, as set forth below; and

- For trespass/conversion, as set forth below.

133.    Amazon has also violated and continues to violate Business & Professions Code § 17200's prohibition against engaging in "unlawful" business acts or practices by violating, and continuing to violate, Section 923 of the Labor Code and the National Labor Relations Act

1    (NLRA), 29 U.S.C. §§ 151–169. As alleged above, Amazon utilized screenshot disabling features

2    in the Amazon Flex app despite the fact delivery workers have a right under the NLRA and Labor

3    Code to take photographs and make recordings of wage statements, including the right to use

4    personal devices to take such pictures or recordings.  Plaintiffs contend Amazon included the

5    screenshot disabling features in the Amazon Flex app for the purpose of preventing delivery

6    workers from having access to permanent records reflecting their pay.

7    134.    Plaintiffs have suffered injury in fact and lost money and/or property as a result of

8    Amazon's unlawful business acts and practices by, *inter alia*, being deprived of compensation for

9    all hours worked including overtime.

**Amazon's Fraudulent Business Practices:**

11   135.   Amazon's acts and practices, as described above, constitute fraudulent business practices

12   within the meaning of Business & Professions Code, §§ 17200, *et seq.*

13   136.    As described herein, Amazon failed to keep accurate records of the hours worked by

14   Plaintiffs in violation of the FLSA, 29 U.S.C. § 211(c) and § 215(a). At all relevant times,

15   Amazon provided Plaintiffs with false records of pay indicating the hours worked, wages paid for

16   the hours worked, applicable pay rates, and other information as is alleged above in Plaintiff'

17   seventh cause of action. In addition, based on fraudulent reporting of hours worked and wages

18   paid, inaccurate information regarding state and federal deductions was provided to Plaintiff.

19   137.    Additionally, as described herein, Amazon represented to Plaintiffs that they, alone, were

20   responsible for the performance of their work and that they, alone, determined the method,

21   details, and means of performing their work. These representations were false.

22   138.    Amazon also represented Plaintiffs were independent contractors not entitled to the

23   compensation and reimbursements set forth above, which was, in fact, also false.

24   139.    A reasonable person would likely have been deceived by all of these representations, acts,

25   and practices and they therefore constitute fraudulent business within the meaning of the UCL.

26   140.    Amazon knew the falsehood of these representations and intended to, and did, induce

27   Plaintiffs' reliance thereupon. Plaintiffs relied upon the truth of the representations, causing

28   economic harm.

141.   Plaintiffs suffered concrete and identifiable economic injuries as a consequence of Amazon's misleading and fraudulent conduct, including but not limited to unpaid wages, including overtime.

### Amazon's Unfair Business Practices:

142.   Amazon's acts and practices, as described above, constitute unfair business practices within the meaning of Business & Professions Code, §§ 17200, *et seq.* Such acts and practices were against established public policy and were pursued to attain an unjustified monetary advantage for Amazon by creating personal disadvantage and hardship to its employees.

143.   Amazon's conduct does not benefit workers or competition. Indeed, the injury to Plaintiffs as a result of Amazon's conduct is far greater than any alleged countervailing benefit. Plaintiffs could not have reasonably avoided the injury they suffered.

144.   The gravity of the consequences of Amazon's conduct as described above outweighs any justification, motive or reason therefore, is immoral, unethical, oppressive, unscrupulous, and is contrary to the public welfare since it transgresses civil statutes of the State of California designed to protect workers from exploitation.

145.   Amazon's acts and practices, as described above, also constitute unfair business practices within the meaning of Business & Professions Code, §§ 17200, *et seq.* in that they violate the enumerated public policy underlying Labor Code Section 923 and the NLRA. Section 923 of the Labor Code and the NLRA declare that it is necessary that the individual worker have full freedom of association, self-organization, and designation of representatives of the worker's own choosing, to negotiate the terms and conditions of the worker's employment, and that the worker shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.  Amazon has violated this policy by preventing delivery drivers from capturing details of how they are compensated for their work by utilized screenshot disabling features in the Amazon Flex app.  Plaintiffs contend Amazon included the screenshot disabling features in the Amazon Flex app for the purpose of preventing delivery workers from having access to permanent records reflecting their pay.

146. Plaintiffs have suffered injury in fact and lost money and/or property as a result of Amazon's unfair business acts and practices by, inter alia, being deprived of compensation for all hours worked including overtime.

147. By and through its unfair, fraudulent, and/ unlawful business practices and acts described herein, Amazon has obtained valuable services from Plaintiffs and has deprived Plaintiffs of valuable rights and benefits guaranteed by law, all to their detriment. Plaintiffs seek an award of restitution, disgorgement, injunctive relief and all other relief allowed under the UCL, including interest and attorneys' fees pursuant to, *inter alia*, Cal. Code of Civ. Proc. § 1021.5.

**ELEVENTH CAUSE OF ACTION**
**FRAUD/INTENTIONAL MISREPRESENTATION**

148. Plaintiffs reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

149. Amazon represented to Plaintiffs that they, alone, were responsible for the performance of his work and that he, alone, determined the method, details, and means of performing his work. These representations were, in fact, false.

150. Amazon also represented to Plaintiffs that Plaintiffs were independent contractors not entitled to the compensation and reimbursements set forth above, which was, in fact, also false.

151. Amazon, at the time it made the representations set forth above, knew the falsehood of these representations and intended to, and did, induce Plaintiffs' reliance thereupon. Plaintiffs reasonably relied upon the truth of the aforementioned statements and representations in entering into and continuing in an employment relationship with Amazon according to the terms established by Amazon. Plaintiffs' reliance was a substantial factor in causing economic harm.

152. As a direct, proximate and foreseeable result of Amazon's misrepresentations and fraudulent conduct, Plaintiffs suffered concrete and identifiable economic injuries, including but not limited to unpaid wages, including overtime.

**TWELFTH CAUSE OF ACTION**
**TRESPASS/CONVERSION**

153. Plaintiffs reallege and incorporate by reference all paragraphs above as if set forth in detail herein.



Class Action Complaint
27

154.    Under California law, Plaintiffs had a possessory interest in the use of the Amazon Flex app for the purpose of viewing their wage records, as well a possessory interest to the records themselves, and a right to make recordings of those records in furtherance of protected concerted activity.

155.    Defendants intentionally disabled the screenshot function in the Amazon Flex app for the purpose of preventing delivery workers from having access to permanent records reflecting their pay and interfering with their right to pursue protected concerted activity.

156.    As a result of Defendants' actions, Plaintiffs were unable to take screenshots of their wage records and other terms and conditions of their work.

157.    Defendants' conduct interfered with Plaintiffs' possessory interest in their mobile devices and legally protected interest in the contents of the Amazon Flex app pertaining to Plaintiffs' earnings and wage records and the terms and conditions of their employment.

158.    Defendants' conduct dispossessed Plaintiffs of the Amazon Flex app insofar as it was used for the purpose of viewing their wage records, and dispossessed Plaintiffs of the possessory interest to the records themselves.

159.    Defendants' conduct deprived Plaintiffs of the use of the Amazon Flex app insofar as it was used for the purpose of viewing their wage records, and deprived Plaintiffs of the possessory interest to the records themselves.

160.    Plaintiffs did not authorize Defendants to disable the screenshot function in the Amazon Flex app.

161.    As a direct, proximate, and foreseeable result of Defendants' intentional interference with Plaintiffs' possessory interest in their mobile devices and legally protected interest in the wage records contained in the Amazon Flex app, Plaintiffs were caused emotional frustration and actual concrete damages arising from the inability to maintain wage records, seek to enforce the rights enumerated in the causes of action claimed above, and generally understand the fundamental conditions of their employment.

162.    By and through its intentional interference with Plaintiffs' Amazon Flex app, Defendants have deprived Plaintiffs of the possessory and legally protected interests described herein, all to



1 their detriment. Plaintiffs seek an award of restitution, disgorgement, injunctive relief and all
2 other relief allowed under California law.

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment against Defendants as follows:

A.     An order certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class;

B.     For actual and compensatory damages according to proof pursuant the California Labor Code, applicable California IWC Orders, and all other applicable laws and regulations.

C.     For restitution and disgorgement to the extent permitted by applicable law;

D.     For an order enjoining Defendants from continuing to engage in the conduct described herein;

E.     For civil and statutory penalties available under applicable law;

F.     For pre-judgment and post-judgment interest;

G.     For an award of attorneys' fees, costs and expenses as authorized by applicable law; and

H.     For punitive damages according to proof;

I.     For such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action so triable.

_____

Robert S. Arns (SBN 65071)
Jonathan E. Davis (SBN 191346)
Kevin M. Osborne (SBN 261367)
Julie C. Erickson (SBN 293111)
Shounak S. Dharap (SBN 311557)
515 Folsom Street, Third Floor
San Francisco, CA 94105
Telephone: (415) 495-7800
Facsimile: (415) 495-7888



Class Action Complaint

30

CASE NUMBER: CGC-17-557507 KIMBERLEE KELLER ET AL VS AMAZON.COM, INC. ET AL

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

DATE: AUG-16-2017

TIME: 10:30AM

PLACE: Department 610
400 McAllister Street
San Francisco, CA 94102-3680

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference. However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 610 twenty-five (25) days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state. **This case is eligible for electronic filing and service per Local Rule 2.11. For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL
CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-
JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR
SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION
PRIOR TO A TRIAL.
(SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400 McAllister Street, Room 103
San Francisco, CA 94102
(415) 551-3869

See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.



**Superior Court of California, County of San Francisco**
**Alternative Dispute Resolution**
**Program Information Package**



> The plaintiff must serve a copy of the ADR information package
> on each defendant along with the complaint.  (CRC 3.221(c))

## WHAT IS ADR?

Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial.  There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences.  In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to court.

## WHY CHOOSE ADR?

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial." (Local Rule 4)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.**  A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.**  The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.**  For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

## HOW DO I PARTICIPATE IN ADR?

Litigants may elect to participate in ADR at any point in a case.  General civil cases may voluntarily enter into the court's ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet) at the clerk's office located at 400 McAllister Street, Room 103;
- Indicating your ADR preference on the Case Management Statement (also attached to this packet); or
- Contacting the court's ADR office (see below) or the Bar Association of San Francisco's ADR Services at 415-782-8905 or www.sfbar.org/adr for more information.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA   94102
415-551-3869

***Or, visit the court ADR website at www.sfsuperiorcourt.org***

The San Francisco Superior Court offers different types of ADR processes for general civil matters; each ADR program is described in the subsections below:

## 1) SETTLEMENT CONFERENCES

The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute early in the litigation process.

**(A) THE BAR ASSOCIATION OF SAN FRANCISCO (BASF) EARLY SETTLEMENT PROGRAM (ESP):** ESP remains as one of the Court's ADR programs (see Local Rule 4.3) but parties must select the program – the Court no longer will order parties into ESP.

**Operation:**  Panels of pre-screened attorneys (one plaintiff, one defense counsel) each with at least 10 years' trial experience provide a minimum of two hours of settlement conference time, including evaluation of strengths and weakness of a case and potential case value.  On occasion, a panelist with extensive experience in both plaintiff and defense roles serves as a sole panelist.  BASF handles notification to all parties, conflict checks with the panelists, and full case management.  The success rate for the program is 78% and the satisfaction rate is 97%.  Full procedures are at: www.sfbar.org/esp.

**Cost:**  BASF charges an administrative fee of $295 per party with a cap of $590 for parties represented by the same counsel.  Waivers are available to those who qualify.  For more information, call Marilyn King at 415-782-8905, email adr@sfbar.org  or see enclosed brochure.

**(B) MANDATORY SETTLEMENT CONFERENCES:** Parties may elect to apply to the Presiding Judge's department for a specially-set mandatory settlement conference.  See Local Rule 5.0 for further instructions.  Upon approval of the Presiding Judge, the court will schedule the conference and assign the case for a settlement conference.

## 2) MEDIATION

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations.  The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO,** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation.  While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending.

**Operation:** Experienced professional mediators, screened and approved, provide one hour of preparation time and the first two hours of mediation time.  Mediation time beyond that is charged at the mediator's hourly rate.  BASF pre-screens all mediators based upon strict educational and experience requirements.  Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection.   The BASF website contains photographs, biographies, and videos of the mediators as well as testimonials to assist with the selection process.  BASF staff handles conflict checks and full case management.  Mediators work with parties to arrive at a mutually agreeable solution.  The success rate for the program is 64% and the satisfaction rate is 99%.

**Cost:** BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the administrative fee are available to those who qualify. For more information, call Marilyn King at 415-782-8905, email adr@sfbar.org or see the enclosed brochure.

**(B) JUDICIAL MEDIATION** provides mediation with a San Francisco Superior Court judge for civil cases, which include but are not limited to, personal injury, construction defect, employment, professional malpractice, insurance coverage, toxic torts and industrial accidents. Parties may utilize this program at anytime throughout the litigation process.

**Operation:** Parties interested in judicial mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court will coordinate assignment of cases for the program. There is no charge for the Judicial Mediation program.

**(C) PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, parties may elect any private mediator of their choice; the selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

## 3) ARBITRATION

An arbitrator is neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

**(A) JUDICIAL ARBITRATION:** When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial.

**Operation:** Pursuant to CCP 1141.11, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed. Local Rule 4.2 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after the filing of a complaint. There is no cost to the parties for judicial arbitration.

**(B) PRIVATE ARBITRATION:** Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE THE ATTACHED STIPULATION TO ADR AND SUBMIT IT TO THE COURT. YOU MUST ALSO CONTACT BASF TO ENROLL IN THE LISTED BASF PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF STIPULATIONS TO BASF.



# Superior Court of California
## County of San Francisco



**HON. JOHN K. STEWART**
PRESIDING JUDGE

## Judicial Mediation Program

**JENIFFER B. ALCANTARA**
ADR ADMINISTRATOR

The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to personal injury, professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial Mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

The Honorable Michael I. Begert        The Honorable Harold E. Kahn
The Honorable Suzanne R. Bolanos        The Honorable Curtis E.A. Karnow
The Honorable Angela Bradstreet        The Honorable Charlene P. Kiesselbach
The Honorable Andrew Y.S. Cheng        The Honorable James Robertson, II
The Honorable Samuel K. Feng        The Honorable Richard B. Ulmer, Jr.
The Honorable Charles F. Haines        The Honorable Mary E. Wiss

Parties interested in Judicial Mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program and deliver a courtesy copy to Department 610. A preference for a specific judge may be indicated on the request, and although not guaranteed, every effort will be made to fulfill the parties' choice. Please allow at least 30 days from the filing of the form to receive the notice of assignment. The court's Alternative Dispute Resolution Administrator will facilitate assignment of cases that qualify for the program.

Note: Space and availability is limited. Submission of a stipulation to Judicial Mediation does *not* guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3869

03/2015 (ja)

**EJT-001-INFO**  Expedited Jury Trial Information Sheet

This information sheet is for anyone involved in a civil lawsuit who will be taking part in an **expedited jury trial**—a trial that is shorter and has a smaller jury than a traditional jury trial.

> You can find the law and rules governing expedited jury trials in Code of Civil Procedure sections 630.01–630.29 and in rules 3.1545–3.1553 of the California Rules of Court. You can find these at any county law library or online. The statutes are online at *http://leginfo.legislature.ca.gov/faces/codes.xhtml.* The rules are at *www.courts.ca.gov/rules.*

**1.  What is an expedited jury trial?**

An expedited jury trial is a short trial, generally lasting only one or two days. It is intended to be quicker and less expensive than a traditional jury trial.

As in a traditional jury trial, a jury will hear your case and will reach a decision about whether one side has to pay money to the other side. An expedited jury trial differs from a regular jury trial in several important ways:

- **The trial will be shorter.** Each side has 5 hours to pick a jury, put on all its witnesses, show the jury its evidence, and argue its case.
- **The jury will be smaller.** There will be 8 jurors instead of 12.
- **Choosing the jury will be faster.** The parties will exercise fewer challenges.

**2.  What cases have expedited jury trials?**

- **Mandatory expedited jury trials.** All limited civil cases—cases where the demand for damages or the value of property at issue is $25,000 or less—come within the *mandatory expedited jury trial* procedures. These can be found in the Code of Civil Procedure, starting at section 630.20. Unless your case is an unlawful detainer (eviction) action, or meets one of the exceptions set out in the statute, it will be within the expedited jury trial procedures. These exceptions are explained more in (7) below.
  - **Voluntary expedited jury trials.** If your case is not a limited civil case, or even if it is, you can choose to take part in a *voluntary expedited jury trial*, if all the parties agree to do so. Voluntary expedited jury trials have the same shorter time frame and smaller jury that the

mandatory ones do, but have one other important aspect—**all parties must waive their rights to appeal.** In order to help keep down the costs of litigation, there are no appeals following a *voluntary* expedited jury trial except in very limited circumstances. These are explained more fully in (9).

**3.  Will the case be in front of a judge?**

The trial will take place at a courthouse and a judge, or, if you agree, a temporary judge (a court commissioner or an experienced attorney that the court appoints to act as a judge) will handle the trial.

**4.  Does the jury have to reach a unanimous decision?**

No. Just as in a traditional civil jury trial, only three-quarters of the jury must agree in order to reach a decision in an expedited jury trial. With 8 people on the jury, that means that at least 6 of the jurors must agree on the verdict in an expedited jury trial.

**5.  Is the decision of the jury binding on the parties?**

Generally, yes, but not always. A verdict from a jury in an expedited jury trial is like a verdict in a traditional jury trial. The court will enter a judgment based on the verdict, the jury's decision that one or more defendants will pay money to the plaintiff or that the plaintiff gets no money at all.

But parties in an expedited jury trial, like in other kinds of trials, are allowed to make an agreement before the trial that guarantees that the defendant will pay a certain amount to the plaintiff even if the jury decides on a lower payment or no payment. That agreement may also put a cap on the highest amount that a defendant has to pay, even if the jury decides on a higher amount. These agreements are known as "high/low agreements." You should discuss with your attorney whether you should enter into such an agreement in your case and how it will affect you.

**6.  How else is an expedited jury trial different?**

The goal of the expedited jury trial process is to have shorter and less expensive trials.

- The cases that come within the mandatory expedited jury trial procedures are all limited civil actions, and they must proceed under the limited discovery and

Judicial Council of California, *www.courts.ca.gov*
Revised July 1, 2016, Mandatory Form
Code of Civil Procedure, § 630.01–630.10
Cal. Rules of Court, rules 3.1545–3.1553

**Expedited Jury Trial Information Sheet**

EJT-001-INFO, Page 1 of 2


**EJT-001-INFO**   **Expedited Jury Trial Information Sheet**

pretrial rules that apply to those actions. See Code of Civil Procedure sections 90–100.

- The voluntary expedited jury trial rules set up some special procedures to help those cases have shorter and less expensive trials. For example, the rules require that several weeks before the trial takes place, the parties show each other all exhibits and tell each other what witnesses will be at the trial. In addition, the judge will meet with the attorneys before the trial to work out some things in advance.

The other big difference is that the parties in either kind of expedited jury trial can make agreements about how the case will be tried so that it can be tried quickly and effectively. These agreements may include what rules will apply to the case, how many witnesses can testify for each side, what kind of evidence may be used, and what facts the parties already agree to and so do not need the jury to decide. The parties can agree to modify many of the rules that apply to trials generally or to any pretrial aspect of the expedited jury trials.

 **Do I have to have an expedited jury trial if my case is for $25,000 or less?**

Not always. There are some exceptions.

- The mandatory expedited jury trial procedures do not apply to any unlawful detainer or eviction case.
- Any party may ask to opt out of the procedures if the case meets any of the criteria set out in Code of Civil Procedure section 630.20(b), all of which are also described in item 2 of the *Request to Opt Out of Mandatory Expedited Jury Trial* (form EJT-003). Any request to opt out must be made on that form, and it must be made within a certain time period, as set out in Cal. Rules of Court, rule 3.1546(c). Any opposition must be filed within 15 days after the request has been served.

*The remainder of this information sheet applies only to voluntary expedited jury trials.*

 **Who can take part in a voluntary expedited jury trial?**

The process can be used in any civil case that the parties agree may be tried in one or two days. To have a voluntary expedited jury trial, both sides must want one. Each side must agree to all the rules described in , and to waive most appeal rights. The agreements between the parties must be put into writing in a

document called *[Proposed] Consent Order for Voluntary Expedited Jury Trial*, which will be submitted to the court for approval. (Form EJT-020 may be used for this.) The court must issue the consent order as proposed by the parties unless the court finds good cause why the action should not proceed through the expedited jury trial process.

 **Why do I give up most of my rights to an appeal in a voluntary expedited jury trial?**

To keep costs down and provide a faster end to the case, all parties who agree to take part in a voluntary expedited jury trial must agree to waive the right to appeal the jury verdict or decisions by the judicial officer concerning the trial unless one of the following happens:

- Misconduct of the judicial officer that materially affected substantial rights of a party;
- Misconduct of the jury; or
- Corruption or fraud or some other bad act that prevented a fair trial.

In addition, parties may not ask the judge to set the jury verdict aside, except on those same grounds. Neither you nor the other side will be able to ask for a new trial on the grounds that the jury verdict was too high or too low, that legal mistakes were made before or during the trial, or that new evidence was found later.

 **Can I change my mind after agreeing to a voluntary expedited jury trial?**

No, unless the other side or the court agrees. Once you and the other side have agreed to take part in a voluntary expedited jury trial, that agreement is binding on both sides. It can be changed only if **both** sides want to change it or stop the process or if a court decides there are good reasons the voluntary expedited jury trial should not be used in the case. This is why it is important to talk to your attorney **before** agreeing to a voluntary expedited jury trial. This information sheet does not cover everything you may need to know about voluntary expedited jury trials. It only gives you an overview of the process and how it may affect your rights. **You should discuss all the points covered here and any questions you have about expedited jury trials with an attorney before agreeing to a voluntary expedited jury trial.**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and address) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: | |
| ATTORNEY FOR (Name): | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
400 McAllister Street
San Francisco, CA 94102-4514

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER:  DEPARTMENT 610 |
|---|---|

**1)** **The parties hereby stipulate that this action shall be submitted to the following ADR process:**

☐ **Early Settlement Program of the Bar Association of San Francisco (BASF)** - Pre-screened experienced attorneys provide a minimum of 2 hours of settlement conference time for a BASF administrative fee of $295 per party. Waivers are available to those who qualify. BASF handles notification to all parties, conflict checks with the panelists, and full case management. www.sfbar.org/esp

☐ **Mediation Services of BASF** - Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐ **Private Mediation** - Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐ **Judicial Arbitration** - Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. www.sfsuperiorcourt.org

☐ **Judicial Mediation** - The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. There is no fee for this program. www.sfsuperiorcourt.org

Judge Requested (see list of Judges currently participating in the program): _____

Date range requested for Judicial Mediation (from the filing of stipulation to Judicial Mediation):

☐ 30-90 days   ☐ 90-120 days   ☐ Other (please specify) _____

☐ **Other ADR process (describe)** _____

**2)** **The parties agree that the ADR Process shall be completed by (date):** _____

**3)** **Plaintiff(s) and Defendant(s) further agree as follows:**

_____

_____

| | |
|---|---|
| Name of Party Stipulating | Name of Party Stipulating |
| Name of Party or Attorney Executing Stipulation | Name of Party or Attorney Executing Stipulation |
| Signature of Party or Attorney | Signature of Party or Attorney |
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | ☐ Plaintiff ☐ Defendant ☐ Cross-defendant |
| Dated: | Dated: |

☐ *Additional signature(s) attached*

**STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:     FAX NO. *(Optional)*: | |
| E-MAIL ADDRESS *(Optional)*: | |
| ATTORNEY FOR *(Name)*: | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
　STREET ADDRESS:
　MAILING ADDRESS:
　CITY AND ZIP CODE:
　BRANCH NAME:

　PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| *(Check one):*  ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000)   ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date:　　　　　　Time:　　　　　　Dept.:　　　　　Div.:　　　　　Room:

Address of court *(if different from the address above)*:

☐ Notice of Intent to Appear by Telephone, by *(name)*:

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
　a. ☐ This statement is submitted by party *(name)*:
　b. ☐ This statement is submitted **jointly** by parties *(names)*:

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
　a. The complaint was filed on *(date)*:
　b. ☐ The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
　a. ☐ All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
　b. ☐ The following parties named in the complaint or cross-complaint
　　(1) ☐ have not been served *(specify names and explain why not)*:

　　(2) ☐ have been served but have not appeared and have not been dismissed *(specify names)*:

　　(3) ☐ have had a default entered against them *(specify names)*:

　c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served)*:

4. **Description of case**
　a. Type of case in ☐ complaint ☐ cross-complaint *(Describe, including causes of action)*:

| Form Adopted for Mandatory Use Judicial Council of California CM-110 [Rev. July 1, 2011] | **CASE MANAGEMENT STATEMENT** | Page 1 of 6 Cal. Rules of Court, rules 3.720–3.730 www.courts.ca.gov |
|---|---|---|

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
   The party or parties request ☐ a jury trial ☐ a nonjury trial.   *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
   a. ☐ The trial has been set for *(date):*
   b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

   c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
   The party or parties estimate that the trial will take *(check one):*
   a. ☐ days *(specify number):*
   b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
   The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
   a.  Attorney:
   b.  Firm:
   c.  Address:
   d.  Telephone number:          f.  Fax number:
   e.  E-mail address:             g.  Party represented:
   ☐ Additional representation is described in Attachment 8.

9. **Preference**
   ☐ This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**
    a. **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.
       (1) For parties represented by counsel: Counsel ☐ has ☐ has not  provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

       (2) For self-represented parties: Party ☐ has ☐ has not  reviewed the ADR information package identified in rule 3.221.

    b. **Referral to judicial arbitration or civil action mediation** (if available).
       (1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

       (2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

       (3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. c. Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing to** participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed to** participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled <br> ☐ Mediation session scheduled for *(date)*: <br> ☐ Agreed to complete mediation by *(date)*: <br> ☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled <br> ☐ Settlement conference scheduled for *(date)*: <br> ☐ Agreed to complete settlement conference by *(date)*: <br> ☐ Settlement conference completed on *(date)*: |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled <br> ☐ Neutral evaluation scheduled for *(date)*: <br> ☐ Agreed to complete neutral evaluation by *(date)*: <br> ☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled <br> ☐ Judicial arbitration scheduled for *(date)*: <br> ☐ Agreed to complete judicial arbitration by *(date)*: <br> ☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled <br> ☐ Private arbitration scheduled for *(date)*: <br> ☐ Agreed to complete private arbitration by *(date)*: <br> ☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled <br> ☐ ADR session scheduled for *(date)*: <br> ☐ Agreed to complete ADR session by *(date)*: <br> ☐ ADR completed on *(date)*: |

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**11. Insurance**
  a. ☐ Insurance carrier, if any, for party filing this statement *(name)*:
  b. Reservation of rights: ☐ Yes ☐ No
  c. ☐ Coverage issues will significantly affect resolution of this case *(explain)*:

**12. Jurisdiction**
  Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.
  ☐ Bankruptcy ☐ Other *(specify)*:
  Status:

**13. Related cases, consolidation, and coordination**
  a. ☐ There are companion, underlying, or related cases.
    (1) Name of case:
    (2) Name of court:
    (3) Case number:
    (4) Status:
    ☐ Additional cases are described in Attachment 13a.
  b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party)*:

**14. Bifurcation**
  ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

**15. Other motions**
  ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*:

**16. Discovery**
  a. ☐ The party or parties have completed all discovery.
  b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:
    Party        Description        Date

  c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify)*:

**CASE MANAGEMENT STATEMENT**

| | CM-110 |
|---|---|
| PLAINTIFF/PETITIONER: | CASE NUMBER: |
| DEFENDANT/RESPONDENT: | |

**17. Economic litigation**

    a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

    b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

    ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

    a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

    b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

**20. Total number of pages attached** *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____
(TYPE OR PRINT NAME)

▸ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▸ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.